UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MUDDY BITES, INC.,

                 Plaintiff,

           -against-

EVERGREEN USA LLC, d/b/a JUST THE FUN PART, and
DOES 1-10,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

24-cv-07089 (LAK)

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED: 4/9/25               │
└─────────────────────────────────┘
```

**MEMORANDUM OPINION**

Appearances:

                 J. Noah Hagey
                 Doug Tilley
                 BRAUNHAGEY & BORDEN LLP

                 *Attorneys for Plaintiff*

                 David S. Gold
                 William W. Stroever
                 Amanda L. DeGroote
                 COLE SCHOLTZ P.C.

                 *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        At the center of this bitterly contested trademark dispute is a sweet, bite-sized, chocolate-filled snack.  Plaintiff Muddy Bites, Inc. ("Muddy Bites") claims that Defendant Evergreen USA LLC ("Evergreen") deliberately copied its allegedly protected product design, packaging trade dress, and wordmarks, seeking to exploit Muddy Bites' burgeoning market presence and hard-earned consumer goodwill.  Before the Court is Evergreen's motion to dismiss Muddy

2

Bites' Amended Complaint.[1]

### *Facts*

As this is a motion to dismiss, the Court assumes the truth of the well-pleaded factual allegations of the Amended Complaint and draws all reasonable inferences in the plaintiff's favor.[2] Muddy Bites alleges that it invented a snack shaped like the "bottom part of a sundae waffle cone."[3] These snacks ("Mini-Cones") allow "customers to relive the cherished childhood experience of eating that last, chocolate-filled bite of a traditional sundae cone from the ice cream truck."[4] Since entering the market in 2019, Muddy Bites has marketed and sold its Mini-Cones under the MUDDY BITES® brand.[5]

As a result of "substantial marketing expenditures and investments," sales of Muddy Bites' Mini-Cones "balloon[ed] year-over-year," increasing from several thousand dollars in 2019 to several million dollars in 2021.[6] Shortly after Muddy Bites opened its Amazon storefront in July 2021, the Mini-Cones reached the #1 listing in Amazon's chocolate cookie category.[7] That same

---

[1]     Dkt 28 (Motion to Dismiss Amended Complaint).

[2]     *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[3]     Dkt 22 (Amended Complaint) at ¶¶ 2, 16.

[4]     *Id.* at ¶ 2.

[5]     *Id.* at ¶¶ 16, 19.

[6]     *Id.* at ¶¶ 19, 20.

[7]     *Id.* at ¶ 19.

3

summer, a viral social media post and several media profile pieces spotlighting Muddy Bites' Mini-Cones contributed to a "meteoric rise" in sales.[8]  This attention and success, Muddy Bites alleges, solidified the public's association between the Muddy Bites brand and its signature Mini-Cone design.[9]

A few months later, in approximately October 2021, Evergreen began marketing and selling copycat Mini-Cones under the label "Just the Fun Part" and other private labels.[10]  Whereas Muddy Bites' Mini-Cones are manufactured in the United States "using only high-quality ingredients,"[11] Evergreen's "inferior imitation" is imported from Turkey.[12] Muddy Bites alleges that Evergreen not only copied its Mini-Cone product design, which has been registered with the United States Patent and Trademark Office ("USPTO") as of September 2024,[13]  but also lifted the product's packaging, advertising, and origin story – all in a deliberate effort "to confuse and mislead consumers into purchasing their knockoffs in the mistaken belief that they were the original MUDDY BITES® Mini-Cones."[14]

---

[8]       *Id.* at ¶¶ 20–23.

[9]       *Id.* at ¶¶ 18-23.

[10]      *Id.* at ¶ 26.

[11]      *Id.* at ¶ 17.

[12]      *Id.* at ¶¶ 9, 26.

[13]      *Id.* at ¶ 25; Dkt 1-1.

[14]      Dkt 31 (Plaintiff's Response) at 6; Dkt 22 at ¶¶ 5, 44, 52, 62, 69.

4

Muddy Bites alleges that Evergreen has infringed on its protected product design, packaging trade dress, and wordmarks. It brings claims against Evergreen for unfair competition under 15 U.S.C. § 1125(a) and New York common law, trade dress infringement under 15 U.S.C. § 1125 and trademark infringement under 15 U.S.C. § 1114, and for cancellation of Evergreen's trademark registration of the tagline "Only The Best Part Of the Sundae Cone!"

Evergreen moves to dismiss Muddy Bites' Amended Complaint under Rule 12(b)(6). With respect to Muddy Bites' Mini-Cone product design, Evergreen argues that the design is unprotectable because it is (1) generic and (2) functional, and that Muddy Bites has failed to adequately allege distinctiveness prior to Evergreen's first use in 2021.[15] As to Muddy Bites packaging trade dress, Evergreen contends that Muddy Bites has not adequately articulated the components of its trade dress.[16] And with respect to its wordmarks, Evergreen argues that Muddy Bites has failed to allege that the tagline "The Best Part of a Sundae Cone" functions as a source identifier, and that its two registered wordmarks – "The Best Bite Multiplied" and "Happiness Multiplied" – fulfill both prongs of the conjoint use rule.[17] Finally, Evergreen argues that all claims against Does 1-10 should be dismissed because Muddy Bites fails to allege any specific factual support for its claims.[18]

---

[15]    Dkt 29 at 8-14.

[16]    *Id.* at 19-22.

[17]    *Id.* at 22-25.

[18]    *Id.* at 25-26.

### *Discussion*

#### I.    *Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] As noted, in deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[21]

#### II.    *Muddy Bites' Mini-Cone Product Design*

"To plead a claim for trade dress infringement based on product design, a plaintiff must plead that (1) its product design is distinctive, (2) there is a likelihood of confusion between its product design and that of the defendant, and (3) its product design is not functional."[22] For claims alleging infringement of a product design, the plaintiff "must always plead – and eventually prove – acquired distinctiveness."[23] "[A] mark has acquired distinctiveness if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a

---

[19]

See *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[20]

*Iqbal*, 556 U.S. at 678.

[21]

See *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir.2001).

[22]

*Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 121 (2d Cir. 2025).

[23]

*Id.* at 122.

6

mark is to identify the source of the product rather than the product itself."[24]  A generic trade dress,

however, is *per se* not distinctive, and therefore cannot be entitled to protection under trademark

law.[25]

Evergreen argues that Muddy Bites' Mini-Cone design, which is registered with the

USPTO, is unprotectable because it is (1) generic and (2) functional.  It argues also that Muddy

Bites has failed to plead distinctiveness of its Mini-Cone design prior to Evergreen's first use in

2021.

### A.    *Whether Muddy Bites' Mini-Cone Product Design is Generic*

A generic design is not capable of trade dress protection even with a showing of

secondary meaning.[26]  This limitation serves as a critical "check on monopoly rights," which is

"particularly important in cases of product design."[27]  "While trademarking a generic term would

create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary

product design would create a monopoly in the goods themselves"[28] or in "an idea, a concept, or a

generalized type of appearance."[29]  This would be at odds with trademark law's purpose: to "protect

---

[24]       *Id.* (internal quotation marks omitted).

[25]       *Id.*

[26]       *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).

[27]       *See id.*

[28]       *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997).

[29]       *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995).

an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products."[30]  At its core, trademark law is intended to "foster competition" and "support[] the free flow of commerce" for the benefit of consumers – not to grant monopolies in goods, concepts, or ideas.[31]  Courts therefore exercise special caution when extending trade dress protection to product designs.[32]

Evergreen argues that Muddy Bites' Mini-Cone design is simply the shape of a generic ice cream cone and, accordingly, cannot be entitled to trade dress protection.[33]  In support of this argument, Evergreen points to MCCARTHY ON TRADEMARKS AND COMPETITION, which explains that a "familiar and commonly used shape of a food item," such as "the shape of a common ice cream cone," cannot be monopolized as a single seller's trademark.[34]  This, Evergreen contends, is precisely what Muddy Bites seeks to do and, as a result, "all sellers of ice cream cone-shaped food

---

[30]

See *Jeffrey Milstein, Inc.,* 58 F.3d at 33.

[31]

See *Matal v. Tam,* 582 U.S. 218, 225 (2017); *see also Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 216 (2d Cir. 2012) (internal quotation marks omitted) ("Such a monopoly is the realm of patent law or copyright law, which seek to encourage innovation, and not of trademark law, which seeks to preserve a vigorously competitive market for the benefit of consumers.").

[32]

See *Landscape Forms, Inc.,* 113 F.3d at 380.

[33]

Dkt 29 at 8-12.

[34]

See 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:6.50 (5th ed.).

The fish-shaped design of Swedish Fish, for example, was found to be generic. *See Malaco Leaf, AB v. Promotion In Motion, Inc.,* 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003) ("[T]he generic design of Malaco's Swedish Fish, along with extensive third party use of the design and Malaco's failure to police infringing third-party uses, renders the Swedish Fish design generic and unprotectable.").

8

products would be infringing on Muddy Bites' trade dress."[35]  Muddy Bites, however, insists that Evergreen distorts its pleading.  It is not claiming trade dress protection for a generic ice cream cone.[36]  Rather, it seeks to protect the particular expression of its Mini-Cone trade dress identified in its federal trademark registration: a "specific 'species' of cone design, namely, a mini-cone that contains decorative cross-hatching and curved lines at the top to connote a filling."[37]

These specified features are the very traits that make the Mini-Cone design identifiable as "the bottom part of a sundae waffle cone."[38]  As Muddy Bites makes clear, the Mini-Cone product is intended to evoke childhood memories of "the last, chocolate-filled bite of a *traditional sundae cone* from the ice cream truck."[39]  The Mini-Cone design advances this purpose. Muddy Bites' stated appeal relies on the fact that customers will recognize the snack as a subpart of a common sundae cone.  These decorative features enable customers to make this association because they are common characteristics of a generic sundae cone.  Decorative cross-hatching, for example, is a feature of all ordinary waffle cones.  And the curved lines, as Muddy Bites

---

[35]
See Dkt 29 at 2. Defendant notes that "Muddy Bites' trademark registration does not limit the alleged trade dress to chocolate within the cone or a particular size." *Id*. at n.3.

[36]
Dkt 31 at 8-9.

[37]
*Id*. at 3. Per Muddy Bites' registration certificate: "The mark consists of a three-dimensional product configuration comprising a coned-shape food dessert consisting of a tapered cone with a rounded tip, where the surface of the cone is covered in straight lines that cross each other in a diagonally-oriented cross-hatched pattern. At the top of the cone is a circular-shaped filling indicated by curved lines." *See* Dkt 1-1.

[38]
Dkt 22 at ¶ 16. The Court takes judicial notice of the common features of an ice cream cone.

[39]
*Id*. at ¶ 2 (emphasis added).

9

acknowledges, signal the filling present at the bottom a traditional sundae cone.[40]  That being said, not every design that calls to mind a familiar object is generic,[41] and Muddy Bites insists that protection of its Mini-Cone design does not prevent Evergreen or others from selling mini-cone snacks, provided they do not imitate the particular features of Muddy Bites' claimed trade dress.[42]

Notably, here, the USPTO granted registration in the specified design to Muddy Bites.[43]  It thus determined that Muddy Bite's Mini-Cone product design was protectable and therefore non-generic.[44]  That USPTO action is important because it gives Muddy Bites the benefit

---

[40]  Dkt 31 at 3.

[41]  *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382 (2d Cir. 2005) ("Trademark protection of a sufficiently stylized version of a common shape or letter will not hamper effective competition because competitors remain free to use nonstylized forms or their own alternative stylizations of the same shape or letter to communicate information about their products.").

[42]  Dkt 31 at 15 ("Muddy Bites's trade dress rights will not result in a monopoly on the genre of ice cream cones, as Defendant falsely urges. Third parties would still be able to produce ice cream cones and even mini-cone snacks, just not those that mimic the specific distinctive constellation of design elements that consumers have long associated with Muddy Bites[.]").

[43]  Dkt 22 at ¶ 25.

Evergreen claims that Muddy Bites obtained its registration through fraud. Dkt 29 at 3 n.4 ("To obtain its generic ice cream cone trademark registration, Muddy Bites misrepresented to the USPTO that this generic cone shape had acquired distinctiveness through five years of 'substantially exclusive' use despite countless other manufacturers selling similar cone-shaped food products in the marketplace.").  Evergreen acknowledges that Muddy Bites' alleged fraud on the USPTO is "not the subject of this motion." *Id.*

[44]  Evergreen argues that Muddy Bites cannot rely on this presumption of validity for infringing use prior to the registration date. This is true as to secondary meaning. *See Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1118 (Fed. Cir. 2018). However, the determination that Muddy Bites' product design is protectable -- and thus not generic or functional -- does not depend on secondary meaning.

of a presumption that its mark is valid.[45]  Although the issue of whether the Mini-Cone design is

generic eventually may pose a hurdle to Muddy Bites' claims, that is a question of fact that must be

addressed at a later stage.[46]

### B.    Whether Muddy Bites' Mini-Cone Design is Functional

"[T]rade dress protection may not be claimed for product features that are

functional."[47]  Protection of exclusive rights in useful product designs is the domain of patent, not

trademark, law.[48]  The functionality doctrine preserves this distinction, by "prevent[ing] trademark

law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting

legitimate competition by allowing a producer to control a useful product feature."[49]  Absent other

---

[45]

    *See United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 552 (2020) ("The owner of a mark on the principal register enjoys 'valuable benefits,' including a presumption that the mark is valid."); *see also Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 260 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) ("[A] decision of the PTO generally receives great deference."); *see also Nike, Inc. v. Reloaded Merch LLC*, No. 22 CIV. 10176 (VM), 2023 WL 8879274, at *5 (S.D.N.Y. Dec. 22, 2023) (noting that "registered trade dress claims do not require plaintiffs to satisfy the same pleading requirements as unregistered trade dress claims" with respect to distinctiveness).

[46]

    *See A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 478 (S.D.N.Y. 2017); *see also Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 482 (S.D.N.Y. 2014); *see also Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F.Supp.2d 432, 436 (S.D.N.Y. 2001).

[47]

    *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).

[48]

    *See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 260 (3d Cir. 2021), as amended (Mar. 10, 2021) ("The Lanham Act protects features that serve only to identify their source. It does not cover functional (that is, useful) features. That is the domain of patents, not trademarks.").

[49]

    *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164–65 (1995).

11

intellectual property protection, competitors are free to copy functional designs and features.[50]

Functionality may be either utilitarian or aesthetic. "[A] product feature is considered to be functional in a utilitarian sense if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article."[51] A feature that is not functional in the utilitarian sense in that it has no "bearing on the use or purpose of the product or its cost or quality"[52] nonetheless may be aesthetically functional if "the aesthetic design of a product is itself the mark for which protection is sought" and "giving the markholder the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'"[53] Trademark protection therefore is unavailable when it would "significantly hinder competition by limiting the range of adequate alternative designs."[54] On the other hand, "distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with

---

[50] See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 441 (2001) ("[C]opying of the functional features of an unpatented product is lawful"); see also 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:63 (5th ed.) ("Once a design or feature is held 'functional,' then, absent a valid utility patent, the design is available for all to copy and use as a matter of free competition, creating all of the recognized economic and social benefits that flow from free and open competition.").

[51] See Sulzer Mixpac AG v. A&N Trading Co., 988 F.3d 174, 182 (2d Cir. 2021) (internal quotation marks omitted).

[52] See TrafFix Devices, Inc., 532 U.S. at 33.

[53] See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 219–20 (2d Cir. 2012) (quoting Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 165 (1995)).

[54] See Christian Louboutin S.A., 696 F.3d at 222 (internal quotation marks omitted).

differently dressed versions of the product are non-functional."[55]

Evergreen argues that Muddy Bites' Mini-Cone design is functional in both utilitarian and aesthetic senses. First, the "shape and cross-hatching are a functional result of the manufacturing process," and the design "provides, among other things, structural support, grip, and a mechanism to eat ice cream and/or chocolate without dirtying one's fingers."[56] Second, the design is essential to Muddy Bites' stated purpose of prompting customers to "relive the cherished childhood experience" of eating the last bite of a sundae cone, which is intended to render the product more appealing rather than act as a source identifier.[57] Finally, trade dress protection for the Mini-Cone design allegedly would "put Evergreen and any other sellers of coneshaped products at a significant non-reputation-related disadvantage."[58]

"The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"[59] While Evergreen may be able produce evidence in support of its arguments, "functionality is a

---

[55] See id. (internal quotation marks omitted).

[56] Dkt 29 at 18.

[57] Id.

[58] Id.

[59] Deckers Outdoor Corp. v. Next Step Grp., Inc., No. 23-CV-02545 (ALC), 2024 WL 3459609, at *2 (S.D.N.Y. July 18, 2024) (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)).

13

question of fact that makes dismissal at the pleading stage inappropriate."[60]  Muddy Bites has
alleged legally sufficient facts which, it contends, "[f]act and expert discovery will bear . . . out."[61]
Moreover, Muddy Bites' trade dress presumptively is not functional because the USPTO determined
that its product design was protectable.[62]

### C.    *Whether Muddy Bites Adequately Alleged Acquired Distinctiveness Prior to Evergreen's First Infringing Use*

Evergreen contends that Muddy Bites has failed adequately to allege distinctiveness
prior to Evergreen's commencement of use in October 2021.[63]  Courts consider the following six
factors to determine whether secondary meaning has attached to the claimed trade dress: "(1)
advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media

---

[60]
    *Id.* at *4; *see also* Kohl's, 2006 WL 2645196, at *4 (S.D.N.Y. Sept. 13, 2006) ("Whether the trade dress described . . . is functional for purposes of the Lanham Act is essentially a fact question.").

[61]
    Dkt 31 at 11.

[62]
    *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("When a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of [the] mark's protectibility by a preponderance of the evidence."); *see also Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16CV2379 (DLC), 2017 WL 5312187, at *14 (S.D.N.Y. Nov. 13, 2017) ("A mark's registration with the United States Patent and Trademark Office creates a presumption that the mark is valid and entitled to protection.")

    Evergreen notes that the USPTO initially refused registration on the Principal Register because it determined that the mark was "a nondistinctive product design." Dkt 32 at 4 n.5. While the USPTO initially stated that there was insufficient proof of acquired distinctiveness, it did not conclude that the product design was functional or generic − defects which would not be cured by a showing of secondary meaning.

[63]
    Dkt 29 at 12.

14

coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."[64]  "[N]o single factor is determinative, and every element need not be proved."[65]

In support of secondary meaning, Muddy Bites' pleading points to its significant advertising expenditures, sales success, media coverage, instances of actual customer confusion, and copying by Evergreen.[66]  Muddy Bites alleges also that its Mini-Cone design was spotlighted in its advertising and media attention prior to 2021.[67]  The combination of these factual averments of secondary meaning is sufficient to survive Evergreen's motion to dismiss.[68]

## III.    *Whether Muddy Bites Sufficiently States the Elements of its Packaging*

---

[64]

*Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 618 (2d Cir. 2008).

[65]

*L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 263 (2d Cir. 1996) (internal quotation marks omitted).

[66]

Evergreen stresses that copying alone is insufficient to establish a claim of trademark infringement.  While this is true, copying can be relevant evidence of secondary meaning. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992) (noting "imitative intent can help support a finding of secondary meaning"); *see also Lon Tai Shing Co. v. Koch + Lowy*, No. 90 CIV. 4464 (DNE), 1991 WL 170734, at *10 (S.D.N.Y. June 20, 1991) ("[T]he Second Circuit and other courts have repeatedly held that such copying is persuasive, if not conclusive, proof of secondary meaning."); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15:38 (5th ed.) ("[T]he majority of courts hold that evidence of an intention to copy or imitate plaintiff's mark or trade dress is probative of the issue of validity: that plaintiff's non-inherently distinctive designation has acquired a secondary meaning.").

[67]

Dkt 22 at ¶¶ 2-4, 18-23, 26; Figs. 3, 6-8.

[68]

Although Muddy Bites' allegations are sufficient to survive this motion to dismiss, it is especially difficult to prove that secondary meaning has attached to a product design. *See* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:11.50 (5th ed.); *see also Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000)..

"The concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer."[69] "[T]here is no question that trade dress may protect the 'overall look' of a product."[70] However, "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress."[71] "[A] plaintiff meets [the articulation] requirement by describing with precision the components – i.e., specific attributes, details, and features – that make up its claimed trade dress."[72] The plaintiff's description "must be sufficiently precise as to some specific combination of components present in the trade dress (such as materials, contours, sizes, designs, patterns, and colors) so as to permit courts and juries to adequately evaluate the underlying claims at the appropriate juncture."[73]

Evergreen argues that Muddy Bites has failed adequately to articulate the components of its packaging trade dress.[74] However, contrary to Evergreen's argument, Muddy Bites does not merely allege that Evergreen copied the "overall look and feel" of its packaging.[75] Muddy Bites'

---

[69]      *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997).

[70]      *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).

[71]      *Id.*

[72]      *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 124 (2d Cir. 2025).

[73]      *Id.* at 124-25.

[74]      Dkt 29 at 19-20.

[75]      Dkt 29 at 20.

pleading identifies the collection of features that allegedly make up its claimed trade dress, namely "images of miniature, cross-hatched, ice cream cones with chocolate filling, which cones are shown both alone as well as broken off a larger ice cream cone," "brown portions on the bag evocative of the filling inside those Mini-Cones, contrasting against an off-white or cream-colored background." and "a rectangular, resealable container."[76]  This is sufficient to meet the articulation requirement. Moreover, the fact that the articulated elements may be generic does not warrant dismissal.  The combination of these elements is "the focus of the distinctiveness inquiry."[77]  If "the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic elements."[78]

Evergreen argues also that its packaging includes its brand name "Just the Fun Part," which "Muddy Bites concedes is not infringing and should obviate any alleged consumer confusion."[79]  However, inclusion of a defendant's own mark does not necessarily negate trade dress infringement.[80]  Accordingly, this is not a basis to dismiss Muddy Bites' claims at this stage.

## IV.    *Muddy Bites' Tagline Mark: "The Best Part of a Sundae Cone"*

Muddy Bites asserts trademark rights in the tagline "The Best Part of a Sundae

---

[76]

Dkt 22 at ¶ 27.

[77]

See *Jeffrey Milstein, Inc.*, 58 F.3d at 32.

[78]

*Id.* at 32.

[79]

Dkt 29 at 21.

[80]

See 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:16 (5th ed.) ("The majority of cases hold that labeling an otherwise infringing look-alike product does not prevent infringement.").

Cone." It requests cancellation of Evergreen's registration of the phrase "Only the Best Part of the Sundae Cone!" which it claims was awarded on the basis of false statements.[81]

Evergreen contends that Muddy Bites fails to allege that it uses the phrase "The Best Part of a Sundae Cone" as a source identifier.[82]  However, Muddy Bites alleges that it has used this tagline since at least 2019, including as demonstrated in Figure 6 of the Amended Complaint, and that consumers associate the tagline with the Muddy Bites' brand due to its longstanding use and frequent proximity to Muddy Bites' Mini-Cone design.[83]

Evergreen argues also that any rights Muddy Bites may have in this phrase are "incredibly weak" because it is a colloquial phrase which should not be afforded marketplace exclusivity.[65]  While it is true that informational or commonly used phrases are not typically viewed as indicators of source,[68] Evergreen's argument is unpersuasive.  First, at the pleading stage, the Court assesses the legal sufficiency of the complaint and, accordingly, it is not the Court's task to assess the relative strength of Muddy Bites' wordmark.[69]  Second, Evergreen possesses trademark

---

[81]
      Dkt 22 at ¶¶ 73-80.

[82]
      Dkt 32 at 9.

[83]
      Dkt 22 at ¶ 31.

[65]
      Dkt 29 at 5, 22-23.

[68]
      1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:87 (5th ed.) ("It is very difficult to achieve trademark status for common phrases and informational slogans and images. . . Even when prominently displayed, these kind of commonly used words will not usually perform the task of identifying source.").

[69]
      See Christiansen v. Omnicom Grp., Inc., 852 F.3d 195, 201 (2d Cir. 2017).

18

rights in a nearly identical phrase, which it now argues is ineligible for protection.  The Court is doubtful that "The Best Part of a Sundae Cone" is such a common slogan that it cannot function as a trademark.[70]

## V.    *Muddy Bites' Registered Wordmarks: "The Best Bite Over and Over" and "Happiness Multiplied"*

Muddy Bites claims that Evergreen combined two of Muddy Bites's registered wordmarks – "The Best Bite Over and Over" and "Happiness Multiplied" – into a single phrase, "The Best Bite Multiplied."[71]  As the Trademark Trial and Appeal Board has explained:

> "In order that opposer's marks may be considered together, two elements must be satisfied before traditional likelihood of confusion analysis can proceed. First, it must be established that the marks have been and are being used together on a single product or in marketing.  Further, it must be established that opposer's marks are used in such a fashion that it would be proper to combine them for purposes of comparison, that is, that they have been used and/or advertised conjointly in such a manner and to such an extent in connection with a single product that they have come to be associated together, in the mind of the purchasing public, as indications of origin for opposer's product."[72]

Evergreen argues that Muddy Bites failed to allege that its two marks are presently being used together on a single product or in marketing.[73]  This is incorrect.  Muddy Bites alleges

---

70

      *See* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7:23 (5th ed.) ("[I]t is very difficult for one competitor to achieve exclusive trademark rights in such common advertising slogans as 'Shop and Compare,' 'Family Bargains,' '½ Off Sale,' or 'Two for the Price of One.' These kind of common merchandising phrases should be free for all competitors to use so long as they are truthful.").

71

      Dkt 22 at ¶¶ 33-34; Fig. 7.

72

      *See Schering-Plough Healthcare Prods., Inc.*, 84 U.S.P.Q.2d 1323, at *4 (T.T.A.B. 2007) (internal citations omitted).

73

      Dkt 29 at 23-24.

it "has long used these taglines together on individual bags of its Mini-Cones, and in such a way that consumers have come to associate those phrases as identifying a product as coming from Muddy Bites."[74]   Muddy Bites clearly has alleged that the two phrases were used on a single product. Indeed, a viral social media post, included as Figure 7 in the Amended Complaint, shows these two marks on the packaging of Muddy Bites' product.[75]   Additionally, in deciding a Rule 12(b)(6) motion to dismiss, the Court views "all facts and allegations in the complaint in the light most favorable" to Muddy Bites.[76]  Viewed in this light, Muddy Bites' allegation that it *"has long used"* these taglines together implies that it is still doing so today.

## VI.    *Muddy Bites' Claims Against Does 1-10*

"It is well-established in the Second Circuit that under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active, conscious force behind the defendant corporation's infringement."[77] Muddy Bites alleges that "[u]pon information and belief, one or more of DOES 1 to 10 directed Defendant Evergreen's infringement and/or was and remains a moving, active, and conscious force behind such infringement."[78] Evergreen argues that the claims against Does 1-10 must be dismissed

---

[74]     Dkt 22 at ¶ 33.

[75]     Dkt 22 at 15.

[76]     See *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990).

[77]     *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 515 (S.D.N.Y. 2014).

[78]     Dkt 22 at ¶ 10.

20

because Muddy Bites fails to meet the facial plausibility standard.

"[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."[79] Muddy Bites' conclusory statement, without further factual support, is legally insufficient to state a claim and, therefore, all claims against Does 1-10 are dismissed.

### *Conclusion*

For the foregoing reasons, Evergreen's motion to dismiss is denied, except as to Muddy Bites' claims against Does 1-10.

Dated:          April 9, 2025

_____
Lewis A. Kaplan
United States District Judge

---

[79]     *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).