UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MUDDY BITES, INC.,

                       Plaintiff,

           -against-

EVERGREEN USA LLC, d/b/a JUST THE FUN PART,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/17/25

24-cv-07089 (LAK)

## MEMORANDUM OPINION

    Appearances:

                J. Noah Hagey
                Doug Tilley
                BRAUNHAGEY & BORDEN LLP

                *Attorneys for Plaintiff*

                David S. Gold
                William W. Stroever
                Amanda L. DeGroote
                COLE SCHOLTZ P.C.

                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Muddy Bites, Inc. ("Muddy Bites") and Evergreen USA LLC ("Evergreen") both sell similar sweet treats: bite-sized chocolate-filled waffle cone snacks reminiscent of the last bite of a sundae cone. The rivalry between these two competitors, however, is anything but sweet.

        Claiming Evergreen infringed on its registered mini-cone trade dress and other purported trademarks, Muddy Bites sued Evergreen. Evergreen in turn alleges that Muddy Bites muddied the waters by procuring its trademark registration through fraud on the United States Patent

2

and Trademark Office ("PTO") and counterclaims for cancellation of Muddy Bites' trademark registration, tortious interference, and attempted monopolization. Before the Court is Muddy Bites' motion to dismiss Evergreen's counterclaims for tortious interference and attempted monopolization.[1]

## *Background*

As this is a motion to dismiss, the Court assumes the truth of Evergreen's well-pleaded factual allegations and draws all reasonable inferences in its favor.[2]

*Muddy Bites' Cease and Desist Letters to Evergreen*

Evergreen is a "New Jersey-based importer, seller, and wholesaler of premium specialty food and beverages."[3] In or about October 2021, Evergreen introduced a bite-sized waffle-cone snack sold under the brand name JUST THE FUN PART![4]

Shortly after Evergreen introduced its product, Muddy Bites on or about October 19, 2021 sent Evergreen a cease-and-desist letter alleging trademark and copyright infringement and demanding that Evergreen "cease and desist from all sale, promotion, distribution, and manufacture

---

[1]    *See* Dkt 41.

[2]    *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019).

[3]    Dkt 38 ¶ 3.

[4]    *Id.* ¶¶ 6–7.

of bite sized waffle cones filled with chocolate."[5]  At the time of the letter, Muddy Bites had an application pending with the PTO for registration of its purported mini-cone trade dress.[6]

In its response dated October 27, 2021, Evergreen denied any wrongdoing, questioned the validity of Muddy Bites' claimed trade dress rights in the allegedly generic and functional ice cream cone design, and noted the existence of several similar products already sold in the United States marketplace.[7] Evergreen maintained that it believed that Muddy Bites' assertion of these rights was frivolous and would be rejected by the PTO.[8]  Muddy Bites reiterated its demands in a follow-up letter dated November 24, 2021.[9]

The dispute subsequently lay dormant for nearly three years — that is, until on or about September 26, 2024 when Muddy Bites served Evergreen with a copy of the complaint in this action.[10] Evergreen responded to Muddy Bites on October 10, 2024, maintaining its earlier positions and identifying an additional sixteen competitors allegedly selling similar mini-cone snacks.[11]

---

[5]     *Id.* ¶¶ 8–10

[6]     *Id.* ¶ 9.

[7]     *Id.* ¶¶ 11–13.

[8]     *Id.* ¶ 12.

[9]     *Id.* ¶ 15

[10]     *Id.* ¶ 16

[11]     *Id.* ¶ 17

4

*Muddy Bites' Trademark Applications and Alleged Fraud on the PTO*

On June 23, 2021, Muddy Bites filed its first application for registration of its mini-cone design on the Principal Register.[12]  Muddy Bites described its trade dress as a "three-dimensional product configuration comprising a coned shape food dessert consisting of a tapered cone with a rounded tip, where the surface of the cone is covered in straight lines that cross each other in a diagonally-oriented cross-hatched pattern."[13]  It noted also that "the top of the cone is a circular-shaped filling indicated by curved lines."[14]  The description does not specify the size of the cone or the type of filling.[15]

The PTO refused registration on March 8, 2022, finding that "the applied-for mark consist[ed] of a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness."[16]  Muddy Bites then amended its application to seek registration on the Supplemental Register, which unlike the registration on the Principal Register, would not confer a presumption of validity.[17]  On May 16, 2023, Muddy Bites' mini-cone trade dress was registered on the Supplemental Register.[18]

---

[12]     *Id.* ¶¶ 18-20.

[13]     *Id.* ¶ 19.

[14]     *Id.*

[15]     *Id.* ¶ 20.

[16]     *Id.* ¶ 21.

[17]     *Id.* ¶ 23.

[18]     *Id.* ¶ 24.

Muddy Bites submitted a second, identical application for registration on the Principal Register on June 2, 2023.[19]  After another refusal on November 8, 2023 due to nondistinctiveness, Muddy Bites responded on May 8, 2024 with a sworn declaration by Muddy Bites' head of marketing, Ms. Ferraioli, that stated that the mini-cone design had "become distinctive . . . through its substantially exclusive and continuous use in commerce for at least five years[.]"[20]  Evergreen alleges that Ms. Ferraioili's declaration was knowingly false because she knew that many companies, including Evergreen, were selling comparable mini-cone snack products at the time and that Muddy Bites' use of the design therefore was not substantially exclusive.[21] Based in whole or part on Ms. Ferraioli's alleged misrepresentation, the PTO registered the design on the Principal Register on September 3, 2024.[22]  Muddy Bites filed this action against Evergreen fifteen days later, on September 18, 2024.[23]

*Muddy Bites' Alleged Interference with Evergreen's Customers*

Evergreen alleges that Muddy Bites communicated with Evergreen's customers "claiming exclusive rights in the mini-cone design, advising them of the lawsuit, providing them

---

[19]
      *Id.* ¶¶ 25–27

[20]
      *Id.* ¶¶ 28-29.

[21]
      *Id.* ¶ 30.

[22]
      *Id.* ¶ 31.

[23]
      *Id.* ¶ 32.

6

with copies of the Complaint, and offering to sell its own mini-cone products to those customers."[24]

On October 31, 2024, Muddy Bites' chief executive officer ("CEO") emailed Target, one of Evergreen's largest customers, stating:

> "Muddy Bites was recently granted a registration by the US Patent and Trademark Office recognizing Muddy Bites's exclusive trade dress rights to the shelf-stable, filled mini-cone snack design that our founders invented. This type of trade dress registration is difficult to achieve and is a significant step for Muddy Bites to protect our brand and cement our rights as the inventor and exclusive seller of the mini-cone snack form factor. As a responsible brand owner, it is important for Muddy Bites to take steps to protect our brand equity and intellectual property, as well as prevent confusion in the marketplace."[25]

In a follow-up email on November 7, 2024, Muddy Bites' CEO stated:

> "Our goal in reaching out to Target was to share that the Patent and Trademark Office recognized the distinctiveness of our mini-cone snack design and that consumers associate mini-cones with our company, as reflected in the attached trademark registration. We are taking measures to enforce these and other IP rights, including through the attached lawsuit. We wanted to bring these developments to Target's attention so it can evaluate its own offerings, such as its Favorite Day mini-cone snacks. Target is of course a world-class brand and we do not believe that it would knowingly sell products that infringe others' intellectual property rights. To your question below, we do not at this time intend to take any legal action against Target (although we do not waive any rights in that regard) because we believe Target is unaware of the facts here and we would much prefer to work together to make sure that Target offers the best product to its guests.
>
> We would like to work collaboratively to ensure that Target sells only properly authorized snacks, which Muddy Bites can gladly provide, and to communicate directly with Target's current mini-cone supplier to address that company's infringement. We will continue to work on the former by providing strategic proposals to our buyer. On the latter, we'd ask that you please let us know the co

---

[24] *Id.* ¶ 33.

[25] *Id.* ¶ 34.

packers or other suppliers from whom Target sources its mini-cone snacks."[26]

On April 17, 2025, Target cancelled certain Evergreen orders, citing the "noise around the IP claims."[27]  Evergreen contends that similar communications to other customers have caused substantial lost sales and damages.[28]

Evergreen counterclaims against Muddy Bites for (1) cancellation of Muddy Bites' U.S. Trademark Registration No. 7491861 on grounds of fraud, (2) tortious interference with Evergreen's customer contracts and business relationships, and (3) attempted monopolization under Section 2 of the Sherman Act.

*Procedural History*

Evergreen moved to dismiss Muddy Bites' amended complaint on January 31, 2025.[29] On April 9, 2025, the Court denied Evergreen's motion to dismiss, except as to Muddy Bites' claims against Does 1-10.[30]  On May 28, 2025, Muddy Bites moved to dismiss Evergreen's counterclaims for tortious interference and attempted monopolization.[31]

---

[26]     *Id*. ¶ 35.

[27]     *Id*. ¶ 36.

[28]     *Id*. ¶¶ 37-38.

[29]     *See* Dkt 28.

[30]     *See* Dkt 33.

[31]     *See* Dkt 41.

### *Discussion*

#### I.    *Legal Standard*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[32] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33]  In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.[34]

#### II.    *Noerr-Pennington Immunity*

Muddy Bites argues that Evergreen's antitrust and tortious interference counterclaims are barred by the First Amendment under the *Noerr-Pennington* doctrine and therefore must be dismissed.[35]

Under the *Noerr-Pennington* doctrine, "defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government."[36]  The purpose of this protection is "to avoid chilling the exercise of the First

---

[32]    *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[33]    *Iqbal*, 556 U.S. at 678.

[34]    *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir.2001).

[35]    *See* Dkt 42 at 6-8.

[36]    *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555–56 (2014).

Amendment right to petition the government for the redress of grievances."[37]  "While the *Noerr-Pennington* cases created an immunity from suit under federal antitrust laws, courts have held that the doctrine applies as well to any claim, federal or state, common law or statutory, which has as its basis the petitioning of the courts or other governmental entities."[38]

Although "the owner of a trademark is entitled to protect its registered rights through litigation without exposing itself to [] liability,"[39] the protection afforded by the *Noerr-Pennington* doctrine is not absolute.  Under the "narrow sham exception" to the *Noerr-Pennington* doctrine, otherwise protected activities do "not qualify for [] immunity if [they are] a mere sham to cover an attempt to interfere directly with the business relationships of a competitor."[40]

"Courts have recognized two specific kinds of conduct that can trigger the sham exception: (1) sham lawsuits; and (2) fraudulent misrepresentations."[41]  "[T]o qualify as a sham, a

---

[37]

*Octane Fitness*, 572 U.S. at 556.

[38]

Noerr-Pennington First Amendment Defense, 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:104 (5th ed.); *see also Video Int'l Production, Inc. v. Warner–Amex Cable Comms., Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988) ("There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.").

[39]

*See Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-CV-599-JLS-MJR, 2021 WL 8322467, at *11 (W.D.N.Y. Sept. 17, 2021).

[40]

*See Octane Fitness*, 572 U.S. at 556.

[41]

*See Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-CV-599-JLS-MJR, 2021 WL 8322467, at *11 (W.D.N.Y. Sept. 17, 2021); *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 581 (S.D.N.Y. 2014), aff'd, 833 F.3d 74 n.1382 (2d Cir. 2016) ("It is clear from cases in the *Noerr–Pennington* area that corruption of an adjudicative process removes any shield that the First Amendment otherwise would provide").

lawsuit must be objectively baseless and must conceal an attempt to interfere directly with the business relationships of a competitor[.]"[42]  "In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition (i.e., in bad faith)."[43]

Evergreen argues that *Noerr-Pennington* immunity does not apply because Muddy Bites' conduct falls within the sham exception.  This is so, Evergreen asserts, because Muddy Bites "(i) made [a] fraudulent misrepresentation to the PTO to obtain a trademark registration; (ii) commenced a sham lawsuit based on that invalid/fraudulently procured registration; and (iii) made false and/or misleading statements to Evergreen's customers based on that invalid/fraudulently procured registration and included copies of the Complaint filed in this action."[44]  Evergreen contends that "Muddy Bites' conduct, from defrauding the PTO, to commencing a sham litigation based on that fraud, to using that fraudulently procured registration and this litigation process as an anticompetitive weapon against Evergreen, falls squarely within the sham exception to the *Noerr-Pennington* doctrine[.]"[45]

The Court concludes that it is inappropriate at this stage to determine whether the *Noerr-Pennington* doctrine applies in this instance.[46]  On a motion to dismiss, dismissal based on

---

[42]     *Id*.

[43]     *Id.*

[44]     *See* Dkt 44 at 15. Notably, Evergreen does not dispute that the type of activity challenged, if it were not a sham, otherwise would fall under the protection of *Noerr-Pennington*.

[45]     *See* Dkt 44 at 18.

[46]     *See In re Xyrem (Sodium Oxybate) Antitrust Litig*., 555 F. Supp. 3d 829, 877 (N.D. Cal. 2021) (explaining that courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage because it is a question of fact whether the challenged petitioning activity is

an affirmative defense, such as immunity under the *Noerr-Pennington* doctrine,[47] "is warranted only if it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."[48]  Evergreen has "no affirmative obligation to plead facts to show that the *Noerr-Pennington* doctrine does not apply, i.e., the sham exception applies."[49]

Here, it is not clear from the face of the complaint that Evergreen's claims are barred as a matter of law.  If, as Evergreen alleges, Muddy Bites knowingly made fraudulent misrepresentations to the PTO, Muddy Bites "purported petitioning activity" may be rendered "a sham not protected from antitrust liability."[50]  Questions of fact that likely are necessary to resolve whether the sham exception applies remain.  It therefore would be inappropriate to dismiss

---

a sham).

[47]

The *Noerr-Pennington* doctrine functions as an affirmative defense. *See 360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19 CIV. 8760 (LGS), 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020).

[48]

*See 360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19 CIV. 8760 (LGS), 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020) (internal quotation marks omitted); *see also Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 395 (S.D.N.Y. 2011) ("A court may dismiss a claim on the basis of an affirmative defense raised in the motion to dismiss, only if the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." (internal quotation marks omitted)).

[49]

*See 360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19 CIV. 8760 (LGS), 2020 WL 5259283, at *4 (S.D.N.Y. Sept. 3, 2020).

[50]

*See Truck-Lite Co.*, 2021 WL 8322467, at *12; *see also United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1124 (D.C. Cir. 2009) ("Where statements are deliberately false or misleading, *Noerr–Pennington* does not apply.").

Evergreen's claims under the *Noerr-Pennington* doctrine at this stage.[51]

*III. Evergreen's Tortious Interference Counterclaim*

      Evergreen advances two theories of tortious interference: tortious inteference with contract and tortious interference with business relationships.  Muddy Bites argues that Evergreen fails to state a claim for tortious interference even if *Noerr-Pennington* immunity does not apply.[52] The Court addresses the adequacy of the pleadings as to each of Evergreen's theories.

     *a. Tortious Interference with Contract*

      "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."[53] Evergreen's claim for tortious interference with contract fails for at least two reasons.

      First, Evergreen does not allege the specific terms of the contracts allegedly breached.  "In order for the plaintiff to have a cause of action for tortious interference of contract, it is

---

[51]

     *See Truck-Lite Co.*, 2021 WL 8322467, at *12 ("Determinations of whether a party's conduct is a genuine attempt to avail itself of the judicial process or is merely a sham is a question of fact that is inappropriate for a motion to dismiss."); *see also Blue Cross & Blue Shield of Vermont v. Teva Pharm. Indus.*, Ltd., 712 F. Supp. 3d 499, 526 (D. Vt. 2024) (collecting cases).

[52]

     *See* Dkt 42 at 13.

[53]

     *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation marks omitted).

axiomatic that there must be a breach of that contract[.]"[54]  Accordingly, Evergreen must "identify a valid contract between [itself] and a third party."[55]  Moreover, "[i]t is imperative that, in bringing a tortious interference claim, a plaintiff identify the relevant terms of the contract that existed that were breached[.]"[56]  Evergreen fails to provide any specifics regarding the terms of its contract with Target – the only named customer in its allegations.  Evergreen provides no information whatsoever as to the other unnamed customers.  Consequently, Evergreen has failed to state sufficient facts that describe the contracts of which Muddy Bites allegedly procured the breach.

Second, Evergreen fails sufficiently to allege actual breach of a contract.  Evergreen alleges only that its "customers, including Target, have cancelled certain of their contracts with Evergreen as a direct result of Muddy Bites' communications and interference" and that Target "cancel[ed] orders of certain Evergreen mini-cone products."[57]  These allegations "leave open the possibility that [Target and others] lawfully terminated the contract[s] or that the contract[s] [were] terminable at will."[58]  "Under New York law, a contract terminable at will cannot be the basis for a tortious interference with contract claim because there can be no breach of contract, a necessary

---

[54]

See *Jack L. Inselman & Co., Inc. v. FNB Fin. Co.*, 364 N.E.2d 1119, 1120 (N.Y.1977) .

[55]

See *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at \*4 (S.D.N.Y. May 22, 2003).

[56]

See *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019) (internal quotation marks omitted).

[57]

See Dkt 38 at ¶¶ 36, 53.

[58]

See *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007).

14

element for tortious interference with contract, when the contract may be terminated at will."[59]

Consequently, Evergreen has failed to state a claim for tortious interference with contract.

### b. Tortious Interference with a Business Relationship

Under New York law, "[t]he elements of tortious interference with a business relationship are '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"[60]

"A properly pleaded complaint for this tort must allege relationships with specific third parties with which the respondent interfered."[61]  With the exception of Target, Evergreen fails to identify any specific third party relationship with which Muddy Bites interfered.  Because Evergreen has not identified any such relationships or stated any relevant facts which might satisfy the additional elements of a tortious interference claim, Evergreen has failed to allege sufficient facts to state a claim for tortious interference of a business relationship with any customer other than

---

[59]

    *See Mraz v. JPMorgan Chase Bank, N.A.*, No. 17-CV-6380, 2018 WL 2075427, at \*6 (E.D.N.Y. May 3, 2018) (internal quotation marks omitted) (cleaned up); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (abandoning or walking away from a contract are not sufficient to allege actual breach of contract because "[t]his does not amount to an allegation that [the party] violated the terms of a contract . . . when it did so").

[60]

    *RFP LLC v. SCVNGR, Inc.*, 788 F.Supp.2d 191, 195 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir.2008)).

[61]

    *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02 CIV. 1363 (PKL), 2003 WL 21203503, at \*6 (S.D.N.Y. May 22, 2003).; *see also Four Finger Art Factory, Inc. v. Dinicola*, No. 99 CIV. 1259 (JGK), 2000 WL 145466, at \*7 (S.D.N.Y. Feb. 9, 2000).

Target.

Target is another matter, and the Court concludes that Evergreen has adequately pleaded tortious interference with that relationship. It alleges an ongoing business relationship with Target, intentional interference with the relationship through the quoted email outreach, and injury to that relationship.[62]

Muddy Bites nevertheless argues that Evergreen fails to allege wrongful means. "The wrongful means requirement makes alleging and proving a tortious interference claim with business relations more demanding than proving a tortious interference with contract claim."[63] "Wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure."[64]

Muddy Bites contends that the email on which Evergreen relies makes clear that Muddy Bites' intent was "to notify Target of Muddy Bites'[] trademark registration and rights, share that Muddy Bites was taking steps to enforce those rights, alert Target to its own potential exposure for selling infringing third party products, and to collaborate to end that infringement," which is "perfectly permissible as a matter of law."[65] While this ordinarily is true if done in good faith,[66]

---

[62]

       With respect to the arguments raised by Muddy Bites as to each of these elements, the Court finds these arguments unpersuasive.

[63]

       *See Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

[64]

       *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).

[65]

       *See* Dkt 42 at 20.

[66]

       *See, e.g.*, *Lombardo v. Dr. Seuss Enters., L.P.,* No. 16 CIV. 9974 (AKH), 2017 WL 1378413, at *5 (S.D.N.Y. Apr. 7, 2017).

Evergreen alleges that Muddy Bites' outreach to Target was premised on rights it knew to be unenforceable because they were procured through a knowing, fraudulent misrepresentation to the PTO. Accepting these allegations as true, as it must at this stage, the Court concludes that Evergreen has alleged sufficient facts to plead a tortious interference claim with respect to Target.

## IV. Evergreen's Antitrust Counterclaim

### a. Walker Process Rule

Muddy Bites argues also that Evergreen's antitrust claim is inadequately pled.[67] Evergreen contends that it has alleged sufficient facts to state a claim for liability under the *Walker Process* rule.[68]

> "In *Walker Process*, the Supreme Court held that a plaintiff could bring an action under § 2 of the Sherman Act based on the alleged maintenance and enforcement of a fraudulently-obtained patent. In order to prevail on a *Walker Process* claim, the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim."[69]

Some "[c]ourts have applied this analysis to intellectual property rights beyond the patent context," including in the context of allegedly fraudulently procured trademark registrations.[70]

---

[67]    *See* Dkt 42 at 22–27.

[68]    *See* Dkt 44 at 18–23.

[69]    *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016) (internal citations omitted).

[70]    *See LEGO A/S v. ZURU, Inc.*, No. 3:18-CV-2045(AWT), 2020 WL 13145135, at *4 (D. Conn. Apr. 22, 2020).

However, "there are fundamental differences between the exclusionary power of a patent vis-à-vis that of a trademark registration."[71] "[B]ecause the economic exclusivity of a trademark is far less than that of a patent, there is far less opportunity for a trademark to play an integral role in violations of the antitrust laws."[72] That said, application of the *Walker Process* rule may be appropriate where the allegedly fraudulently obtained trademark registration is more likely to give rise to market and monopoly power, such as where the registration covers an allegedly generic or functional product design.[73]

Here, Evergreen alleges that Muddy Bites' registered trademark of its mini-cone design is for a generic, functional product design that it registered through fraud and has wielded in an attempt to exclude competitors and dominate the market. Muddy Bites' mini-cone trademark registration thus presents a greater potential for economic exclusion. Consequently, while application of the *Walker Process* rule to trademark registrations may not be suitable in all instances, the Court is not prepared to dismiss the claim on the pleadings.

Here, Evergreen alleges that Muddy Bites, following the rejection of its first application, submitted to the PTO a sworn declaration by its head of marketing, which stated that

---

[71]       § 31:96. Patent and trademark differences, 4 McCarthy on Trademarks and Unfair Competition § 31:96 (5th ed.).

[72]       *Id.*

[73]       *See e.g., Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-CV-599-JLS-MJR, 2021 WL 8322467, at *13 (W.D.N.Y. Sept. 17, 2021) ("It is clear that exclusionary rights granted by the USPTO, whether for a patent or trademark, are exclusionary rights which cannot be used in violation of antitrust laws."); *LEGO A/S v. ZURU*, 2020 WL 13145135, at *4 (D. Conn. Apr. 22, 2020). Indeed, Muddy Bites suggests that the cases cited by Evergreen are those where the "accused parties . . . . wielded their trademarks like patents," *see* Dkt 46 at 8, which is precisely what Evergreen alleges Muddy Bites has done.

the cone design had become distinctive "through its substantially exclusive and continuous use in commerce for at least five years."  It allegedly did so knowing that many other companies were selling substantially identical products.[74]  Evergreen argues that this "knowledge is demonstrated by, among other things: (i) the 2021 cease-and-desist letters sent by Muddy Bites to Evergreen, [which clearly reflected] Muddy Bites' knowledge of Evergreen's sales; and (ii) the letters from Evergreen's counsel to Muddy Bites including a list of companies selling chocolate-filled mini-cone snack products during the relevant period."[75]  Finally, Evergreen alleges that the PTO relied on this fraudulent statement in issuing the registration.[76]  Accordingly, Evergreen has stated sufficient facts to satisfy the first prong of the *Walker Process* test.

### b. Remaining Elements of Attempted Monopolization Counterclaim

To state a claim for attempted monopolization, Evergreen must allege also facts sufficient to show  predatory or anticompetitive conduct with specific intent to monopolize and a dangerous probability of achieving monopoly power.[77]

### i. Predatory or Anticompetitive Conduct with Specific Intent to Monopolize

Evergreen pleads adequately that Muddy Bites engaged in predatory or

---

[74]  Dkt 38 at ¶¶ 29, 30.

[75]  Dkt 44 at 20 (internal citations omitted).

[76]  Dkt 38 at ¶ 31.

[77]  *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).

19

anticompetitive conduct with a specific intent to monopolize. It alleges that Muddy Bites fraudulently procured a trademark registration and then attempted to enforce that fraudulently procured trademark registration to exclude its competitors through a lawsuit and coordinated outreach to Evergreen's customers. In the context of a *Walker Process* claim, these facts are sufficient to allege anticompetitive conduct with specific intent to monopolize.[78]

### ii. *Dangerous probability of achieving monopoly power*

"In order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market."[79] "For purposes of its attempted monopolization counterclaim, [Evergreen] need not plead that [Muddy Bites] actually possesses monopoly power; facts demonstrating that [Muddy Bites] has a dangerous probability of achieving monopoly power in the relevant market are sufficient."[80]

Identification of the relevant market is essential to establishing a dangerous

---

[78]   See *FutureLogic, Inc. v. TransAct Techs., Inc.*, No. CV0503754MMMCTX, 2007 WL 9700696, at *16 (C.D. Cal. Oct. 30, 2007) ("[O]nce fraud in the procurement of the patent has been sufficiently pled, as it has been here, the enforcement of a fraudulently obtained patent is itself a type of predatory conduct that can support an attempted monopolization claim."); *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007) ("[A] valid *Walker Process* claim may be based upon enforcement activity directed against the plaintiff's customers. Threats of patent litigation against customers, based on a fraudulently-procured patent, with a reasonable likelihood that such threats will cause the customers to cease dealing with their supplier, is the kind of economic coercion that the antitrust laws are intended to prevent.").

[79]   *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

[80]   *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 578 (S.D.N.Y. 2011).

probability of achieving monopoly power in that market.[81]  Muddy Bites argues that Evergreen has failed to identify the relevant market and that its claim therefore should be dismissed.[82]  However, "[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."[83]  "To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes . . . and it must be plausible."[84]  "A relevant product market consists of products that have reasonable interchangeability for the purposes for which they are produced – price, use and qualities considered."[85]   "Products are considered reasonably interchangeable if consumers treat them as acceptable substitutes."[86]

Evergreen has identified the relevant market as the "mini-cone snack market" in the United States.  The Court concludes that this is plausible and therefore sufficient at this stage.

The Court holds also that Evergreen has alleged sufficient facts to allege adequately a dangerous probability of achieving monopoly power.  "A plaintiff asserting a claim for attempted

---

[81]

See In re Pool Prods. Distribution Mkt. Antitrust Litig., 166 F. Supp. 3d 654, 666 (E.D. La. 2016) ("Market definition is a necessary component of this analysis, because without a definition of a relevant market, there is no way to measure a defendant's ability to lessen or destroy competition.").

[82]

Dkt 42 at 24–26.

[83]

See Todd v. Exxon Corp., 275 F.3d 191, 199–200 (2d Cir. 2001) (collecting cases).

[84]

See id. at 200 (internal quotation marks and citations omitted).

[85]

A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 241 F. Supp. 3d 461, 481–82 (S.D.N.Y. 2017) (internal quotation marks omitted).

[86]

In re Aluminum Warehousing Antitrust Litig., 95 F. Supp. 3d 419, 454 (S.D.N.Y. 2015).

21

monopolization does not . . . face a particularly high bar in pleading the existence of market power."[87]  Because the existence of market power is a factual question, it often is inappropriate to resolve on a Rule 12(b)(6) motion.[88]  Evergreen has alleged adequate facts to survive dismissal, and the question of Muddy Bites' market power is best addressed at a later stage.

Accordingly, the Court concludes that Evergreen has alleged sufficient facts to plead its attempted monopolization claim.

### Conclusion

For the foregoing reasons, the Court grants Muddy Bites' motion to dismiss [Dkt 41] with respect to Evergreen's tortious interference claims as to any unnamed customers and denies Muddy Bites' motion to dismiss in all other respects.[89]  The Court grants Evergreen's request for leave to amend its pleading.


SO ORDERED.

Dated:        September 17, 2025

_____
Lewis A. Kaplan
United States District Judge

---

[87]  *ThermoLife Int'l LLC v. Neogenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2021 WL 1400818, at *8 (D. Ariz. Apr. 14, 2021).

[88]  *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008).

[89]  The Court denies also Muddy Bites' request for fees and costs.