UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MUDDY BITES, INC.,

Plaintiff,

-v-

EVERGREEN USA LLC, et al.,

Defendants.

CIVIL ACTION NO. 24 Civ. 7089 (LAK) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court in this trademark infringement action involving waffle cone snacks under the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), is the motion of Defendant Evergreen USA LLC ("Evergreen") to compel Plaintiff Muddy Bites, Inc. ("Muddy Bites") to produce documents that Muddy Bites has designated as privileged. (Dkt. No. 112 (the "Second MTC")). Evergreen invokes the crime-fraud exception to the attorney-client privilege and work product protection as the basis for requiring Muddy Bites' production. (Id. at 4). For the reasons set forth below, the Second MTC is DENIED.

## II. BACKGROUND

We incorporate by reference the background of the parties' claims against each other set forth in the prior decisions by the Honorable Lewis A. Kaplan. See Muddy Bites, Inc. v. Evergreen USA LLC, No. 24 Civ. 7089 (LAK), 2025 WL 2662959, at *1-3 (S.D.N.Y. Sept. 17, 2025) ("Muddy Bites II"); Muddy Bites, Inc. v. Evergreen USA LLC, No. 24 Civ. 7089 (LAK), 2025 WL 1079494, at

*1-2 (S.D.N.Y. Apr. 9, 2025) ("Muddy Bites I"). We set forth only the additional background necessary to decide the Second MTC.

**A. Factual Background**

The Second MTC relates to the timeline of Muddy Bites' trademark applications to the U.S. Patent and Trademark Office ("USPTO"), including Muddy Bites' submission of a May 8, 2024 declaration sworn by Jessie Ferraioli, its head of marketing, in which she stated that Muddy Bites' mini-waffle cone design had "become distinctive for the Muddy Bites snacks through its substantially exclusive and continuous use in commerce for at least five years immediately before the date of this statement." (Dkt. No. 112-1 at 4 (the "Declaration")). See Muddy Bites II, 2025 WL 2662959, at *2 (discussing Muddy Bites' trademark applications and Evergreen's fraud allegations). As Judge Kaplan has noted, Evergreen asserts that Ms. Ferraioli's Declaration "was knowingly false because she knew that many companies, including Evergreen, were selling comparable mini-cone snack products at the time and that Muddy Bites' use of the design therefore was not substantially exclusive." Id.

In the Second MTC, Evergreen seeks documents that Muddy Bites has withheld as privileged that concern: (1) Muddy Bites' decision to file a second trade dress application for its mini-cone design (the "Second MB Application"); (2) the prosecution of the Second MB application after the USPTO refused Muddy Bites' first application (the "First MB Application") as unprotectible and non-distinct; and (3) the Declaration. (Dkt. No. 112 at 2 (the "Privileged Documents")). The list of Privileged Documents spans 45 pages of Muddy Bites' privilege log and range in date from March 2022 to September 2024. (Dkt. No. 112-7). Evergreen

argues that the Privileged Documents "bear directly on Muddy Bites' scheme to defraud the USPTO, and Muddy Bites' counsel's role in that process." (Dkt. No. 112 at 3).

Muddy Bites opposes the Second MTC, arguing that the "substantially exclusive" statement in the Declaration "was not even false, let alone fraudulent[]" because "Muddy Bites was the first to introduce its innovative mini-cone snack to the market" (Dkt. No. 118 at 2), which Evergreen's President acknowledged when he told Evergreen employees that Muddy Bites' design was the "[n]ext product" he planned to "knock off" (Dkt. No. 118-1), and then took steps to copy it. (Dkt. No. 119).

**B. Procedural Background**

On June 12, 2026, Evergreen filed an initial motion to compel. (Dkt. No. 101 (the "First MTC")). On June 25, 2026, Judge Kaplan denied the First MTC without prejudice because Evergreen had not identified the specific documents it was seeking. (Dkt. No. 110 at 2). After receiving Muddy Bites' privilege log (Dkt. No. 112-6), on June 29, 2026, Evergreen filed the Second MTC, in which it invokes the crime-fraud production of the Privileged Documents or, in the alternative, for the Court to conduct an in camera review. (Dkt. No. 112 at 5–6). On July 1, 2026, Muddy Bites filed an opposition. (Dkt. No. 118).

On July 13, 2026, Judge Kaplan granted the motion of Muddy Bites' counsel to withdraw and stayed the action for 21 days to permit new counsel for Muddy Bites to appear. (Dkt. No. 129 at 2; see Dkt. No. 124). On September 2, 2026, new counsel appeared for Muddy Bites (Dkt. No. 133), and the parties requested a conference with the undersigned to set a new pretrial schedule. (Dkt. No. 137). Judge Kaplan then lifted the stay (Dkt. No. 138), and referred the matter to the undersigned for a conference. (Dkt. No. 140). In a letter to the Court on

September 15, 2026, the parties advised that the Second MTC remained in dispute. (Dkt. No. 143; see Dkt. No. 139). On September 28, 2026, the Court held a telephone conference during which the parties presented argument on the Second MTC and discussed the pretrial schedule. (Dkt. Nos. 144; 146; minute entry dated Sept. 28, 2026 (the "Conference")).

## III. DISCUSSION

### A. Legal Standard

#### 1. Attorney-Client Privilege and Work Product Protection

We incorporate by reference the Court's discussion of the attorney-client and work product protections in Mandarin Oriental, Inc. v. HDI Global Insurance Company, No. 23 Civ. 4951 (JPC) (SLC), 2025 WL 1638071, at *2–5 (S.D.N.Y. June 10, 2025).

#### 2. The Crime-Fraud Exception

"It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984). To invoke the crime-fraud exception, the party seeking disclosure "must demonstrate that there is 'probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud.'" Chevron Corp. v. Donziger, No. 11 Civ. 691 (LAK), 2013 WL 1087236, at *25 (quoting United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997)). If the party has satisfied the first requirement — that "a crime or fraud was or is being committed[,]" Chevron, 2013 WL 1087236, at *25 — "the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court."

Jacobs, 117 F.3d at 87. If the district court performs an in camera review, it then has discretion "to determine whether the facts are such that the exception applies." Id. The exception is not limited to criminal conduct — "[i]f the advice was sought in furtherance of a fraud that is not necessarily a violation of the criminal code, the communication is nonetheless unprivileged." In re Grand Jury Subpoena, 731 F.2d at 1039. In addition, the crime or fraud "need only have been the objective of the client's communication" and "there need only be presented a reasonable basis for believing that the objective was fraudulent[,]" i.e., "that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." Id.

**B. Application**

We find that Evergreen has not met its burden to show that the crime-fraud exception applies to require production of the Privileged Documents.

First, we, standing in as the "prudent person," do not see "a reasonable basis to suspect that" the purpose of Muddy Bites' submission of the Declaration to the USPTO was "the perpetration or attempted perpetration of a crime or fraud[.]" In re Grand Jury Subpoena, 731 F.2d at 1039. As Muddy Bites notes and Evergreen does not dispute, Muddy Bites "was the first to introduce its innovative mini-cone snack to the market" and has "won numerous industry awards, widespread acclaim, and broad consumer recognition." (Dkt. No. 118 at 2). Indeed, Evergreen's President expressed his intent to copycat Muddy Bites'. (Dkt. Nos. 118-1; 119). While Evergreen has provided examples of Muddy Bites' awareness of copycat products (see,e.g., Dkt. Nos. 114–114-2), the record also shows that Muddy Bites consistently maintained that these copycat uses infringed on the design for which it sought principal registration. (Dkt. Nos. 102 at

2; 102-5 at 2–9; 107 at 4; 118 at 4). See Muddy Bites I, 2025 WL 1079494, at *1. Furthermore, as Muddy Bites points out (Dkt. No. 118 at 4), the Act's use of "'substantially' exclusive . . . makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim." L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999). At this point, Evergreen has offered nothing more than conclusory assertions that somewhere in the 45 pages of Privileged Documents "might provide evidence of a crime or fraud[,]" which is insufficient to satisfy the burden to show that the crime-fraud exception applies. In re Omnicom Grp., 233 F.R.D. 400, 404 (S.D.N.Y. 2006).

During the Conference, Evergreen was unable to point to any case applying the crime-fraud exception to require production of privileged documents concerning a "substantially exclusive" representation to the USPTO, and the authorities on which Evergreen relies are not otherwise persuasive. (See Dkt. No. 112). As support for finding probable cause to believe that the Declaration was in furtherance of a fraud on the USPTO, Evergreen relies on Marshall Field & Co v. Mrs. Fields Cookies, 11 U.S.P.Q.2d 1355 (1989). (Dkt. No. 112 at 5). In Marshall Field, however, the USPTO based its finding that the "Chairman's statement of 'substantially exclusive and continuous use' was knowingly false, unsupported, and without adequate investigation or inquiry" on the Chairman's own admission that before he made the statement, neither he nor any other employee "examine[d] company records to determine whether others were using the name FIELD's[.]" Id. at *2. Here, there is no such admission of a failure to investigate and the record in fact supports the inference that Muddy Bites had a good faith belief in the truth of the statements in the Declaration. Similarly, Specialty Minerals, Inc. v. Pluess-Staufer AG (Dkt. No. 112 at 5), also involved a finding of fraud based on the repeated failure to disclose to

the USPTO instances of prior art about which the applicant knew. 220 F.R.D. 41, 42 (S.D.N.Y. 2004). Here, it would have been obvious to the USPTO that, in the First Application, Muddy Bites did not assert substantial exclusivity, while in the Second Application, it did. See Muddy Bites II, 2025 WL 2662959, at *1–2 (comparing First and Second Applications). In Galperti, Inc. v. Galperti S.r.l., 17 F.4th 1144 (Fed. Cir. 2021) (Dkt. No. 112 at 4), the court addressed a question that is not relevant to the applicability of the crime-fraud exception here — whether the trademark challenger needed to establish secondary meaning of its own use of the mark "in order for those uses to be counted in determining the falsity of [the applicant's] claim of substantially exclusive use." Id. at 1149. Finally, Evergreen's suppositions come nowhere close to the reams of undisputed evidence of crime and fraud on which Judge Kaplan based his probable cause finding in Chevron. 2013 WL 1087236, at *28.

Because Evergreen has not shown probable cause to believe that Muddy Bites committed a crime or fraud sufficient to satisfy the first requirement of the crime-fraud exception, an in camera review is unnecessary. See Jacobs, 117 F.3d at 87.

## IV. CONCLUSION

For the reasons set forth above, the Second MTC is DENIED. Muddy Bites is neither required to produce the Privileged Documents nor submit them for in camera review.

The Clerk of Court is respectfully directed to close Dkt. No. 112.

Dated: New York, New York
September 29, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge